IN THE UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:26-cv-00135

| | |
|---|---|
| RAILYARD HOSPITALITY GROUP, LLC )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>TOWN OF BLACK MOUNTAIN, NC, )<br>JOSH HARROLD, in his official capacity )<br>and individually; JESSICA TROTMAN, )<br>in her official capacity and individually, )<br>RUSSELL CATE, in his official capacity )<br>and individually; MICHELLE KENNEDY, )<br>in her official capacity and individually; )<br>CHARLES RICHARD BURTON in his )<br>official capacity and individually )<br>)<br>Defendants. )<br>) | **COMPLAINT FOR DAMAGES**<br>**(Jury Trial Demanded)** |

NOW COMES Railyard Hospitality Group, LLC (hereinafter known as "the Plaintiff" or "Plaintiff") by and through the undersigned counsel and files its complaint for damages against the Defendants as follows:

1. The Plaintiff is a North Carolina limited-liability company organized in the State of North Carolina and doing business within North Carolina.

2. The Defendant, The Town of Black Mountain, NC is a municipal corporation and political subdivision organized under the laws of the State of North Carolina and may be served with process through its administrative offices located at 160 Midland Avenue, Black Mountain, NC 28711.

3. Defendant Josh Harrold served as Planning Director and/or as Town Manager during periods of time relevant to this Complaint. Plaintiff is informed and believes that Defendant Harrold is a citizen and resident of North Carolina.

4. Defendant Jessica Trotman served as Planning Director and/or as Assistant Town Manager during periods of time relevant to this Complaint. Plaintiff is informed and believes that Defendant Trotman is a citizen and resident of North Carolina.

5. Defendant Russell Cate served as Zoning Administrator during periods of time relevant to this Complaint. Plaintiff is informed and believes that Defendant Cate is a citizen and resident of North Carolina.

6. Defendant Michelle Kennedy served as Planning Director during periods of time relevant to this Complaint. Plaintiff is informed and believes that Defendant Kennedy is a citizen and resident of North Carolina

7. Defendant Charles Richard Burton served as Building Inspector during periods of time relevant to this Complaint. Plaintiff is informed and believes that Defendant Burton is a citizen and resident of North Carolina.

8. The individual Defendants are sued in their individual capacities for actions taken outside the scope of their official duties, including but not limited to enforcement actions, communications, and directives relating to Plaintiff's property.

9. Upon information and belief, and to the extent that Governmental immunity applies to the claims asserted herein, the Town has waived its governmental immunity from such claims pursuant to N.C. Gen. Stat. § 160A-485, either by participation in a government risk pool or through purchase of commercial insurance that will indemnify the Town and/or its employees in their official capacities for any judgment resulting from this action.

10. At all times relevant to the events giving rise to this action, the Town issued building permits, performed building inspections, and issued certificates of occupancy for activities, plans, and/or structures within its territorial jurisdiction that required the same under the North Carolina Building Code.

11. At all times relevant to the events giving rise to this action, the Town issued site plan approvals within its jurisdiction as required by North Carolina law.

12. Upon information and belief, at all times relevant to the events giving rise to this action, the Town collected fees in connection with the issuance of building permits, site-plan approvals, and zoning certificates; the performance of building inspections; and the issuance of certificates of occupancy for a profit beyond incidental income.

13. The subject matter and incidents giving rise to Plaintiff's Complaint occurred in Black Mountain, North Carolina.

14. Venue is proper for the foregoing reasons.

## FACTS

15. The Plaintiff reiterates the foregoing paragraphs as if fully stated verbatim herein.

16. On February 22, 2022, the Town of Black Mountain issued Permit #6751 (Commercial Remodel) for Phase I of the project at 141 S. Richardson Blvd to Railyard Hospitality Group, LLC, approving a multiplex-brewery, six restaurant concepts, makers market, and retail project for Railyard Hospitality Group, LLC at 141 S. Richardson Blvd, Black Mountain, NC.

17. On July 13, 2022, Plaintiff amending the previously approved site plan, describing the project as involving sixteen shipping containers for commissary kitchens and outdoor stage.

18. On September 22, 2022, the Town of Black Mountain issued Permit #7066 (New Commercial) for Phase I of the revised project at 141 S. Richardson Blvd. The approved site plan included a sidewalk and parking areas.

19. In or about October 2022, Defendant Burton assumed the role of Building Inspector. For the Town of Black Mountain.

20. In late 2022, Plaintiff and the owner of the adjacent restaurant, Bush Farmhouse, contributed funds in coordination with the Town of Black Mountain to procure a traffic study for Sutton Avenue and S. Richardson Boulevard to determine whether one or both of these streets should be made one-way traffic and to develop recommendations for safe vehicular traffic, pedestrian crossings, and parking configurations.

21. Recommendations stemming from the study were presented to the Town Council for the Town of Black Mountain in 2023. No action was taken on these recommendations.

22. On March 6, 2023, the Town of Black Mountain issued a Certificate of Occupancy and Compliance for 141 S. Richardson Blvd. to Railyard Hospitality Group, confirming that all inspections were completed, compliances met, and occupancy granted for the commercial remodel under Permit #6751.

23. On April 12, 2023, at a technical review meeting, Plaintiff was informed that it was now required to place each shipping container on a permanent foundation with anchoring, requirements that had not previously been communicated.

24. On April 15, 2023, the RailYard opened to the public.

25. On May 4, 2023, at a technical review meeting, the Town of Black Mountain staff requested manufacturer instructions for the temporary stage, a revised site plan, and timelines for container conversion and sidewalk installation from Plaintiff.

26. On May 8, 2023, the Town of Black Mountain staff emailed Plaintiff a reminder of deliverables and next steps that were agreed upon at the May 4, 2023, technical review meeting, including submission of stage instructions, revised site plan, container conversion timeline, sidewalk construction timeline, and revised sign application.

27. On August 29, 2023, at a technical review meeting and via email, the Town of Black Mountain staff gave Plaintiff deadlines for submitting a revised site plan by September 30, 2023, completing container anchoring by November 30, 2023, starting sidewalk construction by November 30, 2023, submitting a Floodplain Development Permit application by December 30, 2023, and completing sidewalk construction by February 29, 2024.

28. On or about August 29, 2023, Plaintiff submitted a revised site plan.

29. On September 13, 2023, Defendant Burton approved an electrical permit for installation of six new electrical outlets at 141 S. Richardson Blvd. by Mitchell Fields Electric Company as the contractors.

30. On October 2, 2023, Defendant Cate emailed Mr. Richardson stating that since a revised site plan was not received by the September 30, 2023, deadline, the Town would proceed with enforcement activities.

31. Plaintiff responded to the October 2, 2023, email from Defendant Cate asserting his belief that the site plan submitted on August 29, 2023, was accepted in satisfaction of this requirement,

32. On October 30, 2023, Plaintiff requested an update from Town staff.

33. Between November 2023 and June 2024, the Town of Black Mountain issued three (3) Notices of Violation to Plaintiff regarding development activities at 141 S. Richardson Blvd.

34. On August 9, 2024, Plaintiff, acting through counsel, submitted a revised site plan to Defendant Cate, which included on-street, parallel parking along Sutton Avenue.

35. On August 12, 2024, Defendant Cate issued a letter to Plaintiff acknowledging receipt and review of the revised site plan, specifying that on-street parking along Sutton Avenue is prohibited effective immediately.

36. On August 13, 2024, following revisions to the site-plan, Defendant Cate confirmed that the site plan was approved, including on-street parking, and that acceptance of the actionable items resolved all outstanding Notices of Violation.

37. The revised site plan included a notation that the "date for sidewalk completion will be determined as part of the finalization of the plan for parking along Sutton Avenue."

38. On September 27, 2024, Hurricane Helene struck causing devastation across North Carolina.

39. On October 10, 2024, Plaintiff entered into a contract with SLT Properties, LLC, a holding company for the disaster recovery group "The Red Truck Men," with closing to be held on or before December 16, 2024.

40. The purchaser took possession of the property prior to closing and operated the site as a disaster recovery hub for approximately six months.

41. The contract was ultimately terminated.

42. On December 11, 2024, The Disaster Recovery Act of 2024 – Part III, was enacted. The Act provides that for any development approval, including "any building permit" and any

"sketch plans, preliminary plats, . . . a site specific development plan . . . development permit" that was valid at any point in 2024, "the running of the period of the development approval and any associated vested right . . . is suspended [until] December 31, 2027. Session Law 2024-57.

43. In May 2025, the Town of Black Mountain issued a Notice of Violation to Plaintiff and required the owner to take action to prohibit parking along the street right of way.

44. The property owner placed traffic cones and yellow caution tape parallel to the public street in an effort to prevent parking on the property by the public.

45. On July 1, 2025, the Town of Black Mountain issued another Notice of Violation to the property owner stating that previous measures to secure the property and prevent parking had been acceptable, but that the tape and cones had been damaged and removed and illegal parking was occurring again. The notice required the property owner to "install a more permanent barrier to prevent any further illegal parking" within ten (10) days.

46. Upon receipt of the notice, Plaintiff replaced the traffic cones with metal posts with "no parking" and "tow away zone" signs, replaced the yellow caution tape, and placed large concrete blocks spaced several feet apart around the perimeter of the property.

47. On July 23, 2025, Defendant Burton issued the Town of Black Mountain a permit for fence installation at 141 S. Richardson Blvd.

48. On August 7 and 8, 2025, the Town of Black Mountain caused a six-foot tall chain-link fence to be installed approximately 48-inches off the edge of the pavement of the public street around two sides of the property located at 141 S. Richardson Boulevard, blocking access to the public street on both sides.

49. Plaintiff was not given notice of the decision to take such action and had no opportunity to appeal this decision.

50. The Town obtained no court order allowing this extraordinary enforcement measure.

51. On August 28, 2025, Anna Stearns, attorney for Plaintiff, notified Defendant Cate that she had been asked to assist with resolving parking issues at 141 S. Richardson. She requested assistance in obtaining a "parking permit" at the instruction of Defendant Harrold, then serving as Town Manager.

52. On August 28, 2025, Defendant Trotman, then serving as Assistant Town Manager, clarified to Ms. Stearns that the Town of Black Mountain does not issue "parking permits," because no such permit exists. According to Ms. Trotman, the property owner was required to submit a revised site plan and receive a new zoning permit, and no site plan would be approved unless it included the construction of a sidewalk.

53. On September 8, 2025, at a monthly meeting of the Town Council for the Town of Black Mountain, Defendant Kennedy stopped Ms. Stearns in the corridor after Ms. Stearns' public comments and emphatically claimed that the fence was installed as an urgent life and safety measure to prevent vehicles from parking in an unsafe manner along the road.

54. On September 15, 2025, the Town of Black Mountain released a public statement regarding development violations and abatement actions at 141 S. Richardson Bld., including the installation of fencing to prohibit unpermitted parking and the background of compliance efforts.

55. The public statement included numerous factual misstatements or mischaracterizations and omitted relevant details.

56. On October 2, 2025, Defendant Kennedy sent an email to Plaintiff indicating that the fence would not be removed until (1) off-street parking was established, and (2) the property owner either completed the installation of a sidewalk along Sutton Avenue or conveyed a portion of the property to the town to be used for on-street parking.

57. On October 10, 2025, Plaintiff sought approval from the Town to re-open the Railyard in accordance with the existing, approved site-plan.

58. Defendant Kennedy responded that the Town of Black Mountain had not received the approved site plan referenced by Mr. Richardson and reiterated that a completed site plan was required to obtain a certificate of occupancy and establish use for the building.

59. On October 15, 2025, Mr. Richardson again inquired about the timeline to obtain a permit for previously permitted uses to begin reopening as soon as possible.

60. Plaintiff placed large boulders inside the fence along the perimeter of the property and requested that the Town remove the fence as there were now permanent measures in place to prevent unpermitted public parking along the street.

61. On October 21, 2025, Craig Justus, attorney for the Town of Black Mountain, asserted that the boulders had been placed in the Town's right of way, which constituted unpermitted encroachments and posed a hazard to traffic. Mr. Justus demanded immediate removal of the boulders and questioned why more effort was being spent on the fence area rather than completing the elements of the approved site plan, specifically the sidewalk.

62. Upon information and belief, there exists no platted or written, express easement for the rights of way of Sutton Avenue, S. Ridgeway Avenue, or S. Richardson Boulevard, where the same abut Plaintiff's property.

63. Upon information and belief, the Town's easement is limited to that width necessary for maintenance of the existing, paved, town-maintained streets.

64. Upon information and belief, the Town has no easement or right-of-way extending 48-inches into Plaintiff's property from the edge of pavement of any of these public streets.

65. On or about February 9, 2026, the Town of Black Mountain entered into a lease agreement with Norfolk Southern railroad to establish on-street parking on Sutton Avenue opposite Plaintiff's property.

66. Thereafter, the Town of Black Mountain proceeded to gravel the parking area, allowing on-street parking of the same type previously prohibited on Plaintiff's property.

67. Upon information and belief, the Town of Black Mountain has permitted on-street parking of the same type at multiple business locations throughout its jurisdiction.

## COUNT ONE
## Substantive and Procedural Due Process Violations

68. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

69. As of August 13, 2024, Plaintiff had a valid, approved site plan which resolved all outstanding Notices of Violation.

70. Pursuant to The Disaster Recovery Act of 2024 – Part III, Plaintiff's site plan would not expire for failure to substantially commence work until December 31, 2027.

71. In the aftermath of Hurricane Helene, the Town, through its planning and zoning officials, began issuing notices of violation related to items that had been resolved by the revised site plan.

72. Pursuant to The Disaster Recovery Act of 2024 – Part III, Plaintiff was required to substantially commence work on the project contemplated by the approved site plan on or before December 31, 2027.

73. Plaintiff was note required by state law or town ordinance to complete any particular element of the site plan before December 31, 2027.

74. The property owner has been unjustly prohibited from engaging in business activities or occupying the Railyard property since August, 2025.

75. Defendants justified installation of a chain-link fence as a necessary life and safety measure to prevent parking that required motorists to back out of a parking space onto a public street.

76. In early 2026, Defendants secured a lease from Norfolk Southern Railroad for property directly opposite Plaintiff's property and installed exactly the same type of parking that had been characterized as unsafe and unlawful.

77. Defendants have taken directly contradictory positions regarding Plaintiff's compliance, including approving the site plan on August 13, 2024, and later asserting that no approved site plan existed.

78. As a result, Plaintiff was deprived of fair notice and a meaningful opportunity to conform its conduct to Defendants' requirements.

79. The Defendants acted in bad faith or so capriciously and arbitrarily that their action was without adequate determining principle or was unreasoned.

80. As a direct result of Defendants' wrongful actions, Plaintiff incurred and continues to incur substantial expenditures in defending its rights including, but not limited to, consultant fees and attorney's fees.

81. As a direct result of Defendants' wrongful actions, Plaintiff has suffered substantial damages, including, but not limited to, (i) out-of-pocket expenses; (ii) loss of profits which would have been reasonably gained from the Project and the occupancy of the deck and; (iii) lost opportunities to sell the site for a substantial profit.

82. Despite compliance with all the standards that lawfully curb unguided discretion, contrary to law, through the required application/hearing process for the commercial permit, Plaintiff was subjected by Defendants to a vague, over-reaching, and nebulous standard. Said standard in the quasi-judicial context to be applied by nonelected employees constitutes an unlawful delegation of legislative authority as set forth in Article II, Section I of the North Carolina Constitution *(Jackson v. Guilford County Bd. of Adj.,* 275 N.C. 155, 165, 166 S.E.2d 78, 85 (1969) and the due process and equal protections clauses of the United States Constitution *(State of Washington ex rel. Seattle Title Trust Co. v. Roberge,* 278 U.S.116, 122, 49 S.Ct. 50, 52(1928)).

83. In disregard of the law, the Defendants, wrongfully injured, and continue to injure, the Plaintiff based on erroneous standards and considerations.

84. Based on the actions of the Defendants as alleged above, being arbitrary and capricious and an abuse of discretion, the Plaintiff is entitled to recover from the Defendants its damages as more fully developed at trial in these proceedings.

85. The Defendants applied against Plaintiff a vague, over-reaching Zoning Ordinance with no legal or rational basis or justification, depriving Plaintiff of his property rights without the law of the land as set forth in Article I, Section §19 of the North Carolina Constitution and without due process as set forth in the 14th Amendment to the United States Constitution.

86. The actions of Defendants were clearly arbitrary and unreasonable, with no substantial relationship to a legitimate governmental purpose, including that the action taken was unambiguously outside delegated authority from the State as established by statute and long-standing case law. There is no rational basis for the Defendants' conduct in this matter such that a review of the record shocks the conscience.

87. Plaintiff has exhausted all administrative remedies and/or those remedies have been rendered futile by the ongoing actions of the Defendants.

88. As a result of the above alleged constitutional violations, Plaintiff is entitled to have and recover from the Defendants damages with interest as determined by a jury at trial.

## COUNT ONE
## Declaratory Judgment – Violation of N.C. Gen. Stat. § 160D-175

89. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

90. Plaintiffs hereby seek a declaratory judgment pursuant to the North Carolina Uniform Declaratory Judgment Act, N.C. Gen. Stat. § 1-253, et seq.

91. An existing and justiciable controversy has arisen in that the Plaintiff and Defendants disagree as to the legal authority of the Town of Black Mountain to abate alleged zoning violations by the construction of a chain-link fence on private property.

92. Defendant Town of Black Mountain failed to obtain a court order authorizing its abatement action as required by Section 160D-175 of the North Carolina General Statutes.

93. Consequently, the actions of the Town of Black Mountain were ultra vires and in excess of its authority under state law.

94. Pursuant to N. C. Gen. Stat. § 1-253, et seq., this Court has the authority to resolve questions as to the rights and obligations of the parties hereto as to the abatement actions.

95. Plaintiffs are entitled to a declaration by the Court determining the status, rights, and obligations of the Parties, finding and concluding, that the Town acted *ultra vires* and without sufficient legal authority when it directed and caused the construction of the fence on Plaintiff's property.

## COUNT TWO
## Negligence and Gross Negligence

*Against Defendant Josh Harrold in his Individual and Official Capacities*

96. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

97. Defendant Harrold served as Town Manager for the Town of Black Mountain during periods relevant to this Complaint.

98. In his official capacity, Defendant Harrold had final approval and authority over all actions taken by the Zoning Administrator, Planning Director, Building Inspector and Assistant Town Manager.

99. Prior to serving as Town Manager, Defendant Harrold served as Planning Director for the Town of Black Mountain.

100. Upon information and belief, Defendant Harrold is familiar with and has sufficient knowledge of the Town of Black Mountain's Land Use Code.

101. Upon information and belief, Defendant Harrold knew or should have known that the Town of Black Mountain was required to apply to the North Carolina General Court of

Justice for an injunction and order of abatement prior to undertaking erection of the chain-link fence on private property.

102. Despite having such knowledge and familiarity, Defendant Harrold permitted employees under his supervision to proceed with construction of the fence on Plaintiff's property.

103. On more than one occasion, Defendant Harrold improperly instructed Plaintiff to obtain a "parking permit," which he asserted could be obtained upon payment of a $50.00 fee.

104. Upon information and belief, no such permit exists in the Town's Land Use Code.

105. Defendant Harrold had a duty to act with reasonable prudence and care in the administration of the Town's Land Use Code, and in his oversight of employees under his supervision.

106. Defendant Harrold breached those duties.

107. Plaintiff was damaged as the direct and proximate result of Defendant Harrold's breach of his professional duties.

108. Defendant Harrold's actions constitute willful and/or wanton conduct.

109. Defendant Harrold's actions amount to an intentional failure to carry out duties imposed by law.

110. Defendant Harrold's actions were done with the intent to be prejudicial and/or injurious to Plaintiff and/or with reckless disregard that such actions would be prejudicial or injurious to Plaintiff.

111. Defendant Harrold's actions constituted a conscious and intentional disregard of and indifference to the rights of others, including Plaintiff.

**COUNT THREE**
**Negligence and Gross Negligence**
*Against Defendant Jessica Trotman in her Individual and Official Capacities*

112. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

113. Defendant Trotman served as Assistant Town Manager for the Town of Black Mountain during periods relevant to this Complaint.

114. In her official capacity, Defendant Trotman had supervisory authority over actions taken by the Zoning Administrator, Planning Director, and Building Inspector.

115. Prior to serving as Assistant Town Manager, Defendant Trotman served as Planning Director for the Town of Black Mountain.

116. Upon information and belief, Defendant Trotman is familiar with and has sufficient knowledge of the Town of Black Mountain's Land Use Code.

117. Upon information and belief, Defendant Trotman knew or should have known that the Town of Black Mountain was obligated to apply to the North Carolina General Court of Justice for an injunction and order of abatement prior to undertaking erection of the chain-link fence on private property.

118. Despite having such knowledge and familiarity, Defendant Trotman permitted employees under her supervision to proceed with construction of the fence on Plaintiff's property.

119. Defendant Trotman had a duty to act with reasonable prudence and care in the administration of the Town's Land Use Code, and in her oversight of employees under her supervision.

120. Defendant Trotman breached those duties.

121. Plaintiff was damaged as the direct and proximate result of Defendant Trotman's breach of her professional duties.

122. Defendant Trotman's actions constitute willful and/or wanton conduct.

123. Defendant Trotman's actions amount to an intentional failure to carry out duties imposed by law.

124. Defendant Trotman's actions were done with the intent to be prejudicial and/or injurious to Plaintiff and/or with reckless disregard that such actions would be prejudicial or injurious to Plaintiff.

125. Defendant Trotman's actions constituted a conscious and intentional disregard of and indifference to the rights of others, including Plaintiff.

## COUNT FOUR
## Negligence and Gross Negligence
*Against Defendant Russell Cate in his Individual and Official Capacities*

126. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

127. Defendant Cate served as Zoning Administrator for the Town of Black Mountain during periods relevant to this Complaint.

128. In his official capacity, Defendant Cate was responsible for administering and enforcing the zoning regulations for the Town of Black Mountain in a manner consistent with state and federal law.

129. Defendant Cate had a duty to maintain adequate records of zoning decisions made by him in his official capacity.

130. Upon information and belief, Defendant Cate failed to properly maintain such records or failed to appropriately transmit such records to other members of the Planning and Zoning Department for the Town of Black Mountain.

131. Defendant Cate had a duty to act with reasonable prudence and care in the administration of the Town's Land Use Code.

132. Defendant Cate breached those duties.

133. Plaintiff was damaged as the direct and proximate result of Defendant Cate's breach of his professional duties.

134. Defendant Cate's actions constitute willful and/or wanton conduct.

135. Defendant Cate's actions amount to an intentional failure to carry out duties imposed by law.

136. Defendant Cate's actions were done with the intent to be prejudicial and/or injurious to Plaintiff and/or with reckless disregard that such actions would be prejudicial or injurious to Plaintiff.

137. Defendant Cate's actions constituted a conscious and intentional disregard of and indifference to the rights of others, including Plaintiff.

## COUNT FIVE
## Negligence and Gross Negligence

*Against Defendant Michelle Kennedy in her Individual and Official Capacities*

138. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

139. Defendant Kennedy served as Planning Director for the Town of Black Mountain during periods relevant to this Complaint.

140. In her official capacity, Defendant Kennedy was responsible for administering and enforcing the Land Use Code for the Town of Black Mountain in a manner consistent with state and federal law.

141. Upon information and belief, Defendant Trotman is familiar with and has sufficient knowledge of the Town of Black Mountain's Land Use Code and with relevant provisions of state and federal law.

142. Upon information and belief, Defendant Kennedy knew or should have known that the Town of Black Mountain was obligated to apply to the North Carolina General Court of Justice for an injunction and order of abatement prior to undertaking erection of the chain-link fence on private property.

143. Despite having such knowledge and familiarity, Defendant Kennedy directed the construction of the fence on Plaintiff's property.

144. Defendant Kennedy dispatched armed, uniformed police officers to the personal residence of Plaintiff's Managing Member, John Richardson, for the sole purpose of delivering a letter regarding administration of the Town's Land Use Code.

145. Defendant Kennedy knew that Plaintiff was represented by counsel.

146. Defendant Kennedy could have delivered any required correspondence to Plaintiff's counsel.

147. Defendant Kennedy's actions were calculated to intimidate Plaintiff's Managing Member and were motivated by malice.

148. Defendant Kennedy had a duty to act with reasonable prudence and care in the administration of the Town's Land Use Code.

149. Defendant Kennedy breached those duties.

150. Plaintiff was damaged as the direct and proximate result of Defendant Kennedy's breach of her professional duties.

151. Defendant Kennedy's actions constitute willful and/or wanton conduct.

152. Defendant Kennedy's actions amount to an intentional failure to carry out duties imposed by law.

153. Defendant Kennedy's actions were done with the intent to be prejudicial and/or injurious to Plaintiff and/or with reckless disregard that such actions would be prejudicial or injurious to Plaintiff.

154. Defendant Kennedy's actions constituted a conscious and intentional disregard of and indifference to the rights of others, including Plaintiff.

## COUNT SIX
## Negligence and Gross Negligence
*Against Defendant Charles Richard Burton in his Individual and Official Capacities*

155. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

156. Defendant Burton served as Building Inspector for the Town of Black Mountain during periods relevant to this Complaint.

157. In his official capacity, Defendant Burton was responsible for impartially applying the North Carolina Building Code on behalf of the Town of Black Mountain in a manner consistent with state and federal law.

158. Upon information and belief, Defendant Burton issued a building permit to the Town of Black Mountain for construction of the fence on Plaintiff's property.

159. Upon information and belief, Defendant Burton approved issuance of the building permit despite his knowledge that no abatement order had been applied for or issued by a court of competent jurisdiction.

160. Upon information and belief, Defendant Burton created multiple fictitious social media profiles which he used to anonymously comment on social media posts related to Plaintiff's dispute with the Town of Black Mountain.

161. Defendant Burton had a duty to act with reasonable prudence and care in the administration of the Town's Land Use Code.

162. Defendant Burton breached those duties.

163. Plaintiff was damaged as the direct and proximate result of Defendant Burton's breach of his professional duties.

164. Defendant Burton's actions constitute willful and/or wanton conduct.

165. Defendant Burton's actions amount to an intentional failure to carry out duties imposed by law.

166. Defendant Burton's actions were done with the intent to be prejudicial and/or injurious to Plaintiff and/or with reckless disregard that such actions would be prejudicial or injurious to Plaintiff.

167. Defendant Burton's actions constituted a conscious and intentional disregard of and indifference to the rights of others, including Plaintiff.

## COUNT SEVEN
## Negligent Hiring, Training, and Supervision
*Against Defendant Town of Black Mountain*

168. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

169. The Town of Black Mountain owed Plaintiff a duty of reasonable care to supervise the work of its planning and zoning officials and to ensure that the actions taken by those employees were in compliance with federal and state law.

170. The Town of Black Mountain failed to adequately supervise the work of its employees.

171. Failure to adequately supervise its employees was a proximate cause of Plaintiff's damages, which exceed $75,000.00.

## COUNT EIGHT
## Violations of Art. I, §1 and 35 of the North Carolina Constitution

172. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

173. By the actions of the Defendants as alleged above, Plaintiff and its owners and investors have been deprived of liberty and fruits of their labor pursuant to Article I, §1 and §35 of the North Carolina Constitution, entitling Plaintiff to recover from Defendants damages with interest, in excess of $75,000 as determined by a jury at trial.

## COUNT NINE
## Violations of Art. I, §19 of the North Carolina Constitution
*Against all Defendants*

174. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

175. Defendants are tasked with impartially applying and administering the Town of Black Mountain's zoning and land use ordinances.

176. Upon information and belief, Defendants reviewed site plans for other similarly situated property owners within its jurisdiction in a manner that complied with state law and its own ordinances.

177. Upon information and belief, the abatement or enforcement action of erecting a fence around private property has never been taken by the Town of Black Mountain in response to any other asserted zoning or land use violation.

178. There are many examples of on-street parking in configurations similar to that in place at the Railyard, including public parking operated by the Town itself.

179. Defendants applied an arbitrary and capricious standard in place of the clearly defined standards of the Town of Black Mountain's ordinances and Chapter 160D of the North Carolina General Statutes.

180. Upon information and belief, Plaintiff is alone in facing the level and manner of enforcement undertaken by Defendants.

181. Plaintiff has been treated differently from others similarly situated as the result of intentional or purposeful discrimination and there is no rational basis for the difference in treatment.

182. Upon information and belief, the actions of Town officials were prompted by improper motives and purposes.

183. Defendants, by their actions alleged herein, have violated rights granted to Plaintiff pursuant to Art. I § 19 of the North Carolina Constitution by:

   a. Administering their authority against Plaintiff in a discriminatory fashion and with an unequal hand;

   b. Applying arbitrary and capricious standards against Plaintiff;

   c. Interfering with Plaintiff's property interests without providing a Constitutionally sufficient procedure allowing Plaintiff to be heard at a meaningful time and in a meaningful manner; and

d. Failing to follow applicable rules and procedures.

184. As a result of the actions as alleged herein, Plaintiff has been deprived of due process and the equal protection of the laws in violation of Art. I, § 19 of the North Carolina Constitution, entitling Plaintiff to have and recover of the Defendants damages, with interest, in excess of $75,000, to be determined by a jury at trial.

## COUNT TEN
## Violations of the 14th Amendment to the U.S. Constitution
*Against all Defendants*

185. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

186. Defendants are tasked with impartially applying and administering the Town of Black Mountain's zoning and land use ordinances.

187. Upon information and belief, Defendants reviewed site plans for other similarly situated property owners within its jurisdiction in a manner that complied with state law and its own ordinances.

188. Upon information and belief, the abatement or enforcement action of erecting a fence around private property has never been taken by the Town of Black Mountain in response to any other asserted zoning or land use violation.

189. There are many examples of on-street parking in configurations similar to that in place at the Railyard, including public parking operated by the Town itself.

190. Defendants applied an arbitrary and capricious standard in place of the clearly defined standards of the Town of Black Mountain's ordinances and Chapter 160D of the North Carolina General Statutes.

191. Upon information and belief, Plaintiff is alone in facing the level and manner of enforcement undertaken by Defendants.

192. Plaintiff has been treated differently from others similarly situated as the result of intentional or purposeful discrimination and there is no rational basis for the difference in treatment.

193. Upon information and belief, the actions of Town officials were prompted by improper motives and purposes.

194. Defendants, by their actions alleged herein, have violated rights granted to Plaintiff pursuant to the 14th Amendment to the United States Constitution by:

a. Administering their authority against Plaintiff in a discriminatory fashion and with an unequal hand;

b. Applying arbitrary and capricious standards against Plaintiff;

c. Interfering with Plaintiff's property interests without providing a Constitutionally sufficient procedure allowing Plaintiff to be heard at a meaningful time and in a meaningful manner; and

d. Failing to follow applicable rules and procedures.

195. As a result of the actions as alleged herein, Plaintiff has been deprived of due process and the equal protection of the laws in violation of the 14th Amendment to the United States Constitution, entitling Plaintiff to have and recover of the Defendants damages, with interest, in excess of $75,000, to be determined by a jury at trial.

**COUNT ELEVEN**
**Regulatory Taking**

196. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

197. Plaintiff had a reasonable investment-backed expectation in the development of its property and the issuance of required permits based on the applicable standards of the Land Use Code of the Town of Black Mountain.

198. The Town erected a fence around portions of Plaintiff's property limiting access and use and dissuading potential buyers who saw the fence as an impediment to productive use and development of the site.

199. Defendants' actions deprived Plaintiff of productive use of its property and amounted to substantial interference with Plaintiff's elemental property rights.

200. Plaintiff has been unable to open or operate its business at the site for a period of more than six months.

201. Plaintiff has lost numerous seven-figure offers to purchase the property as the direct and proximate result of the fence erected by the town.

202. These actions have deprived Plaintiff of economically viable use of its property.

203. As a result of the Defendants' unreasonable application of authority under the Land Use Code, Plaintiff's property interests were taken or deprived, entitling Plaintiff to just compensation for what was lost under the 5th and 14th Amendments to the United States Constitution and Article I, § 19 of the North Carolina Constitution through physical exclusion and regulatory interference.

**COUNT TWELVE**

**42 U.S.C.S. § 1983 – Civil Action for Deprivation of Rights**

*Against Defendant Town of Black Mountain*

204. Plaintiff incorporates by reference all allegations outlined above as if reproduced here, verbatim.

205. The actions complained of herein were taken pursuant to official policies, customs, or practices of the Town of Black Mountain, or were taken by officials with final policymaking authority, including but not limited to the Town's Planning Director, Zoning Administrator, Building Inspector, Assistant Town Manager, and Town Manager.

206. Based on Defendants' actions as alleged above, Plaintiff has been deprived of its rights, privileges, or immunities secured by the Constitution and law, entitling Plaintiff to relief under 42 U.S.C.S. § 1983 (hereinafter "1983 Claim").

207. Based on the 1983 Claim, Plaintiff is entitled to recover its damages, with interest, in an amount excess of $75,000.00 to be determined by a jury at trial.

208. Moreover, Plaintiff is entitled to have and recover its attorney's fees pursuant to the 1983 Claim.

## PRAYER FOR RELIEF

Plaintiff prays Judgment of the Court as follows:

1. That the Court enter a judgment declaring that the Town of Black Mountain acted unlawfully and in violation of the requirements of Chapter 160D of the North Carolina General Statutes when it directed and caused the construction of a fence on Plaintiff's private property.
2. An award of damages from the Defendants, jointly and severally, in excess of $75,000.00 as determined by a jury trial;
3. For a trial by jury;
4. For attorney's fees as allowed by law, including, but not limited to, G.S. 6-21.7 (Session Law 2019-111) and 42 U.S.C.A. § 1988;

5. For an award of costs as allowed by law;

6. For an award of interest as allowed by law;

7. For any further relief that the Court deems just and proper.

This ___ day of _________ 2026.

Respectfully submitted,

ALDERSON LAW
12 Whitsett Street
Greenville, SC 29601
864-622-5757
rpa@aldersonlawsc.com

s/ Ryan P. Alderson
Ryan P. Alderson, Esq.
(Federal Bar No. 12693)
*Attorney for Plaintiff*